John Marshall OAKLEY, II,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–180.

Supreme Court of Wyoming.

March 19, 1986.

Leonard Munker, State Public Defender, Julie Naylor, Appellate Counsel, Gerald M. Gallivan, Wyoming Defender Aid Program, and John A. Masterson, Student Intern, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Timothy L. Goddard, Legal Intern, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

John Oakley, now convicted of his third felony (the last being aggravated robbery), was sentenced pursuant to Wyoming's habitual-criminal statute, § 6–10–201, W.S. 1977 (1983 Replacement), to a confinement of ten to 20 years. He appeals by contending that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Art. 1, § 14, of the Wyoming Constitution, and that his commission of aggravated robbery is not the required violent felony for habitual-criminal sentence enhancement under § 6–10–201(b)(i).

We affirm.

Appellant Oakley visited his brother, David, in Laramie in January, 1985. During one night, while David was asleep, three rifles and a television were stolen from the apartment and were duly reported to the police.

Thereafter, on February 11, 1985, a man wearing a bandana over the lower half of his face entered the Fix-N-Mix Liquors in Cheyenne carrying one of those stolen rifles. The masked man, later identified as Oakley, declared, "This is a hold up," and,

at gunpoint, ordered one employee to face the wall. The other employee was ordered to open the cash-register drawers. Appellant absconded with $936, and disappeared into the darkness. The next day, a rifle was found on the roof of a garage near the Fix-N-Mix Liquors. The employees identified appellant, both through a photograph line-up and later at the preliminary hearing, and identified the rifle which was found on the roof as the robbery weapon. The rifle was an unloaded .22, incapable of being fired as it was missing a firing pin.

Appellant was first found guilty of aggravated robbery under § 6–2–401(c), W.S. 1977 (1983 Replacement). The jury then found that he had twice previously been convicted of felonies and appellant was sentenced by the trial court under the habitual-criminal statute, § 6–10–201, W.S.1977 (1983 Replacement), for a penitentiary term of ten to 20 years.

Oakley does not argue here that his sentence was an abuse of discretion, nor contend that Wyoming's habitual-criminal statute, § 6–10–201, is unconstitutional. He first asserts that the sentence imposed on him pursuant to the habitual-criminal statute constitutes cruel and unusual punishment.

Although this is not an abuse-of-discretion case, our analysis of sentence review in *Wright v. State*, Wyo., 670 P.2d 1090 (1983), reh. denied 707 P.2d 153 (1985), is helpful in perspective. Chief Justice Rooney explained in Wright that:

"* * * We do not follow the common-law rule that a sentence is not subject to appellate review if it is within the limits set by the legislature." 670 P.2d at 1091.

However, he acknowledged that imposing sentence

"'* * * is a burdensome decision which no trial judge could lightly make and

which we will not lightly overturn.'" 670 P.2d at 1092, quoting from *Scheikofsky v. State*, Wyo., 636 P.2d 1107, 1113 (1981).

See also *State v. Sorrentino*, 36 Wyo. 111, 253 P. 14, 16 (1927), and the lengthy list of citations in the concurring opinion of Justice Thomas in *Wright v. State*, supra, 670 P.2d at 1097.

Oakley, to the contrary, bases his assertion that his sentence was cruel and unusual punishment and therefore violative of the Eighth Amendment largely on the recent United States Supreme Court decision in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Because of this reliance on *Solem*, it is helpful to review the line of cases leading up to that decision.

In perspective, the United States Supreme Court would seem to be wrestling with its role in criminal-sentencing review.[1] In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), that Court decided that a life sentence imposed after a third nonviolent felony conviction under a Texas recidivist statute was not cruel and unusual punishment under the Eighth Amendment. The *Rummel* court, in a five-to-four decision,[2] stated that:

"* * * for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." 445 U.S. at 274, 100 S.Ct. at 1139.

Rummel received a mandatory life sentence under the Texas statute as required after conviction of a third felony. In appealing his sentence to the United States Supreme Court, Rummel argued for a proportionality concept—a scale by which the Court could measure the crime against the

---

1. See a comprehensive analysis and examination of the Eighth Amendment implication of Solem in Baker and Baldwin, *Eighth Amendment Challenges to the Length of a Criminal Sentence: Following the Supreme Court From Precedent to Precedent*, 27 Ariz.L.Rev. 25 (1985); also Note, *Proportionality in Sentencing: Solem v. Helm*, 15 S.W.L.Rev. 123 (1984).

2. Rummel was convicted of three nonviolent felonies—fraudulent use of a credit card in 1964, passing a forged check in 1969, and obtaining money by false pretenses in 1973. The four justices dissenting in Rummel were Powell, Brennan, Marshall and Stevens.

punishment. The Court rejected the concept in denying Rummel's attempt to compare his sentence with the sentence he would have received for the same crime in another state or for a different crime in his state of Texas. 445 U.S. at 281–282, 100 S.Ct. at 1142–43.

Next came *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556, reh. denied 455 U.S. 1038, 102 S.Ct. 1742, 72 L.Ed.2d 156 (1982). Hutto was given a 40-year sentence for possession of nine ounces of marijuana. A United States District Court held that the sentence violated the Eighth Amendment. The United States Supreme Court reversed the district court,[3] and held that the district court had clearly erred in even considering whether the sentence fit the crime. The Court said:

"* * * [W]e distinguished between punishments—such as the death penalty—which by their very nature differ from all other forms of conventionally accepted punishment, and punishments which differ from others only in duration. This distinction was based upon two factors. First, this 'Court's Eighth Amendment judgments should neither be or appear to be merely the subjective views of individual Justices.' * * * And second, the excessiveness of one prison term as compared to another is invariably a subjective determination, there being no clear way to make 'any constitutional distinction between one term of years and a shorter or longer term of years.'" 454 U.S. at 373, 102 S.Ct. at 705.

Further,

"Hutto makes crystal clear that under Rummel it is error for appellate courts to second-guess legislatures as to whether a given sentence of imprisonment is excessive in relation to the crime * * *." *Solem v. Helm*, supra, 463 U.S. at 311, 103 S.Ct. at 3020, BURGER, C.J., dissenting.[4]

By last pronouncement, the United States Supreme Court sent into the world *Solem v. Helm*, supra. Helm had been convicted of six nonviolent felonies in South Dakota. The seventh felony conviction, for writing a check for $100 on an account which did not exist,[5] subjected him to South Dakota's habitual-criminal statute and a sentence of life in prison without parole. Guided by *Rummel*, each reviewing court affirmed the sentence until Helm's appeal reached the Eighth Circuit Court of Appeals. The Eighth Circuit distinguished *Rummel* from *Helm* because Rummel's life sentence carried with it the possibility of parole while Helm's sentence did not. The United States Supreme Court agreed with the Eighth Circuit, and held that Helm's sentence violated the Eighth Amendment.[6]

In *Solem*, the United States Supreme Court adopted a proportionality analysis by embracing the concept they had forcefully rejected in *Rummel* and *Hutto*:

"In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the

---

**3.** The appeal history is not that simple. The district court issued the writ of habeas corpus which appellant Davis requested. A panel of the Fourth Circuit Court of Appeals reversed. Then the Fourth Circuit reheard the case and affirmed the district court. The United States Supreme Court granted certiorari, vacated the decision of the Fourth Circuit, and remanded the case for reconsideration pursuant to the *Rummel* decision. The Court of Appeals reaffirmed the district court. The United States Supreme Court reversed in *Hutto v. Davis*, supra, prompting this comment to the Fourth Circuit in the opinion:

"* * * unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the

judges of those courts may think it to be." 454 U.S. at 375, 102 S.Ct. at 706.

**4.** Another five-to-four decision, this time with Powell, Brennan, Marshall, Blackmun and Stevens, JJ., in the majority and Burger, White, Rehnquist and O'Connor, JJ., dissenting.

**5.** The penalty for uttering a "no account" check for $100 in South Dakota is five years imprisonment and a $5,000 fine.

**6.** The Eighth Amendment to the United States Constitution says:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292, 103 S.Ct. at 3010–11.

Despite its change in direction, the Court did not overrule Rummel.

█ We can analyze Oakley's sentence under either *Rummel* or *Solem* and still conclude that Oakley's sentence is not cruel and unusual punishment violative of either the Eighth Amendment to the United States Constitution or Art. 1, § 14 of the Wyoming Constitution. Rummel precluded federal courts from making a proportionality analysis of length of sentences in all but the most unusual circumstances.[7]

The majority in *Solem* stated the following about Rummel:

"[S]ince the *Rummel* Court * * * offered no standards for determining when an Eighth Amendment violation has occurred, it is controlling only in a similar factual situation." 463 U.S. at 303 n. 32, 103 S.Ct. at 3016–3017 n. 32.

We need only compare the facts of Rummel to Oakley to determine that Oakley's punishment is not cruel and unusual. Rummel received a mandatory life sentence upon conviction of a third felony under the Texas recidivist statute. Appellant here received a ten to 20 year sentence for a third felony conviction (armed robbery) under the Wyoming recidivist statute. We are comfortable in concluding that because Rummel's life sentence was upheld under an Eighth Amendment challenge, Oakley's ten to 20 year sentence need not be disturbed by this court under a similar challenge.

Turning to *Solem,* appellant Oakley's primary objection to his sentence under the proportionality test raises consideration of the gravity of the offense and the harshness of the penalty—the first prong of the *Solem* test. Oakley points out that *Solem* would require consideration of "the harm caused or threatened to the victim or society, and the culpability of the offender." 463 U.S. at 292, 103 S.Ct. at 3010–11, and consequently contends that when robbing the Fix-N-Mix he deliberately chose to use a nonfunctional gun, unloaded and absent a firing pin, to consciously avoid violence and harm.[8]

No support for the argument is afforded by the robbery statute under which he was charged:

"Robbery; aggravated robbery; penalties.

"(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 he:

"(i) Inflicts bodily injury upon another; or

"(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.

"(b) Except as provided in subsection (c) of this section, robbery is a felony punishable by imprisonment for not more than ten (10) years.

"(c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:

"(i) Intentionally inflicts or attempts to inflict serious bodily injury; or

"(ii) Uses or exhibits a deadly weapon or a *simulated deadly weapon.* * *"
(Emphasis added.) Section 6–2–401, W.S.1977.

In considering rationale similar to this, the Georgia Court of Appeals in *Watts v. State,* 142 Ga.App. 857, 237 S.E.2d 231 (1977), said:

were in no actual danger, we cannot foresee how he would have reacted had any of the victims refused to cooperate. Defendant's threatening conduct could very easily have led to serious injury or death. *State v. Garcia,* 141 Ariz. 97, 100, 685 P.2d 734, 737 (1984)." 710 P.2d at 433–434.

---

**7.** I.e., "if a legislature made overtime parking a felony punishable by life imprisonment." 445 U.S. at 274 n. 11, 100 S.Ct. at 1139 n. 11.

**8.** In making a *Solem* "gravity of the offense" analysis in *State v. Allie,* 147 Ariz. 320, 710 P.2d 430 (1985), the Arizona Supreme Court said: "* * * Even though no physical injuries were suffered and defendant claims the victims

"* * * A man facing the muzzle of a firearm held by an assailant has no way of knowing whether the gun is loaded or whether it is functional; the prudent man will assume that it is and will respond accordingly. Why should the assailant thereafter be extended mitigation for his crime if he proves the weapon was not functional?" 237 S.E.2d at 233.

See also *Evanson v. State*, Wyo., 546 P.2d 412 (1976); Annot., 81 A.L.R.3d 1006 (the victim's reasonable belief as to the nature of the gun used in the robbery as relevant to a determination of whether the gun was dangerous or deadly); Annot., 79 A.L.R.2d 1412, 1426 (cases where courts have recognized that an unloaded gun could be a "deadly weapon" when used as a firearm solely); and Annot., 74 A.L.R. 1206. The Wyoming legislature, in Ch. 70, S.L. of Wyoming 1975, specifically addressed the subject in criminal-law amendment to encompass the unloaded gun.

We are not inclined to say that use of an unloaded gun in an armed robbery will avoid violence and harm. Applying the *Solem* test, we believe that the threat to the victim and the culpability of the offender, when weighed against the ten to 20 year sentence which Oakley received, reach a balance well within the acceptable range of the case criteria.

Oakley's efforts to compare his ten to 20 year sentence under the Wyoming habitual-criminal statute fall short of the life-sentence challenges in *Rummel* and *Solem*, and the 40-year sentence unsuccessfully challenged in *Hutto*. In fact, the sentence for ten to 20 years under Wyoming's habitual-criminal statute would be within the range of punishment if Oakley had only been sentenced for the underlying crime of aggravated robbery, since the aggravated-robbery statute carries a sentence range of imprisonment of not less than five years nor more than 25 years. Section 6–2–401(c).

At least one other court has considered that as a factor in determining whether an appealed sentence was disproportionate to the crime:

"The Supreme Court in *Solem v. Helm* has made it clear that '[o]utside the context of capital punishment, successful challenges of the proportionality of particular sentences will be exceedingly rare.' [463] U.S. [at 289–90], 103 S.Ct. at 3009. There is nothing in this case to indicate that the appellant's sentence was disproportionate to the crime, nor inconsistent with the sentence he could have received if the charge of habitual criminal had not been lodged. Ramos [the appellant in this case] could have been sentenced to a term of twenty-year imprisonment and required to serve ten years without becoming eligible for parole, even in the absence of the habitual offender statute." *Government of the Virgin Islands v. Ramos*, 730 F.2d 96, 98 (3d Cir.1984).

In *Osborn v. State*, Wyo., 672 P.2d 777 (1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984), we said:

"* * * What the punishment shall be for prohibited acts belongs to the legislative branch as an absolute, exclusive and inherent power not shared with the courts of Wyoming." 672 P.2d at 797.

Even in *Solem*, where the Court did apply an extensive proportionality analysis, it was said:

"* * * In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16.

Oakley's sentence is not one of those rare cases where an extended analysis of proportionality is necessary.[9] An individu-

---

**9.** The Fifth Circuit Court of Appeals similarly declined to make an extended Solem analysis in *Moreno v. Estelle,* 717 F.2d 171 (5th Cir.1983), cert. denied 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984). Quoting *Solem,* the Fifth Circuit noted that Solem did not overrule Rum-

mel in cases not clearly distinguishable from Rummel. Since the appellant's sentence was not clearly distinguishable, the appeals court denied his request for a remand to the district

al with two prior felony convictions whose sentence is only ten years for armed robbery can hardly have cause to complain on the basis of Wyoming law relative to proportionality with other states. Oakley was fortunate that he did not get closer to the actual 25 years maximum provided by the armed-robbery statute or the 50 years maximum of § 6–10–201. Any individual who has been down for two prior felonies is in troubled terrain when embarking on a violent felony, and is indicating a directed choice for an extensively extended future enforced residential obligation.

We will not engage in a lengthy analysis under all three of the *Solem* criteria, including a consideration of the sentences imposed on similarly situated defendants in this and other jurisdictions, except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense (the first of the *Solem* criteria). Oakley's sentence does not merit that kind of in-depth *Solem* analysis, and the *Solem* opinion does not require that kind of analysis in a case such as this.

It should be further noted that the amendment to the proposed criminal code revision by adding the requirement that the triggering third felony be a designated *violent felony* preguessed the *Solem* test by including a proportionality provision in the statute itself. Consequently, neither *Rummel* nor *Solem* should veto effectuation of sentences under the Wyoming habitual-criminal statute. Note is taken of the deliberate changes made, from Ch. 15, S.L. of Wyoming 1973 to the present law requiring the violent felony for habitual-criminal sentencing. See Ch. 75 S.L. of Wyoming 1982, and Ch. 171, Criminal Code Revisions Chapter 10, Art. 2, S.L. of Wyoming 1983.

The recent legislative criminal-law provisions of each offense were categorized and grouped by type and would demonstrate an intent to inculcate rationality and proportionality and to remove clear inconsistencies in minimum and maximum sentence provisions. Ch. 171, S.L. of Wyoming 1983; Ch. 75, S.L. of Wyoming 1982. The court for a *Solem* analysis. 717 F.2d at 180–181.

legislature left broad discretion to the judiciary. Questions of that exercise raise the hard discretional problems of special cases such as this court wrestled with in *Wright v. State*, supra. This case on its facts is not that kind of a "hard case." Nor do we attempt to determine those future "hard cases" in this decision.

### The Article 1, § 15 Issue

■ Oakley further challenges his sentence under Art. 1, § 15, Wyoming Constitution, which states:

"Penal code to be humane.

"The penal code shall be framed on the humane prinicples of reformation and prevention."

We held in *Jahnke v. State*, Wyo., 692 P.2d 911 (1984), that:

"* * * [t]he constitutional provision [Art. 1, § 15] * * * is not so narrowly drawn that we would be justified in concluding that the only factors which the court may consider in the imposition of sentence are prevention and rehabilitation. The provision speaks to the penal code, *not to sentencing*, and we are unable to detect any intention on the part of the Constitutional Convention to so limit the discretion of sentencing judges in criminal cases." (Emphasis added.) 692 P.2d at 930.

Even if Art. 1, § 15 should properly apply to sentencing, the trial judge imposed sentence with the humane principles of reformation and prevention foremost in mind. Prior to imposing sentence, the trial judge heard testimony from a psychiatrist regarding appellant's personality disorder, reviewed in the presence of the appellant, counsel and the jury the appellant's history of drug abuse, his unhappy family history, culpability of his past crimes, and the fact that he used an unloaded weapon in this aggravated robbery, and further said:

"* * * [Y]ou are going to need drug rehabilitation, probably continuously for a while, in the penitentiary setting and when you get out. It will be something that I'll be making a recommendation to

the Parole Board about and certainly is a necessary condition for any parole or any release that may be considered for you down the road.

"The second thing is the characterization of a personality disorder. It may be called an antisocial personality, it may be called something else. These are resistent to change. They represent your way of dealing with society. And, unless there is some concerted effort on your part to understand the rules of society and begin to deal with them in a realistic and meaningful way, you are doomed to continue on, as you have, in conflict with law enforcement, courts, and with your fellow citizens."

Immediately before imposing sentence, the trial judge stated:

"The Court will be considering mercy in your case and will be granting substantial authority in the hands of the Board of Parole to make a decision also in this regard as to when you should be released and as to the conditions of your parole when you are released. Because I want them to address the questions of your future, and I'll be recommending drug treatment for you, and I am recommending to you that you have the responsibility in that area to get—take control of your life."

We again point out that the sentence imposed under the habitual-criminal statute was within the sentence limits of the underlying crime of aggravated robbery.

We are convinced without hesitation that Oakley's most recent encounter with our criminal-justice system has been handled and guided humanely by the principles of reformation and prevention.

### The Statutory Interpretation Issue

■ Appellant's final contention is that his sentence under the habitual-criminal statute is not justified because aggravated robbery is not a violent felony within the meaning of the habitual-criminal statute, which reads:

"'Habitual criminal' defined; penalties.

"(a) A person is an habitual criminal if:

"(i) He is convicted of a *violent felony;* and

"(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

"(b) An habitual criminal shall be punished by imprisonment for:

"(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions; * * *." (Emphasis added.) Section 6–10–201, W.S.1977.

The legislature has defined violent felony in the criminal code at § 6–1–104(a)(xii), W.S.1977:

"'Violent felony' means murder, manslaughter, kidnapping, sexual assault in the first or second degree, robbery, aggravated assault, aircraft hijacking, arson in the first or second degree or aggravated burglary."

Although aggravated robbery is not listed separately, robbery as an offense is included. Robbery is a lesser included ingredient of aggravated robbery. It does not logically follow that the legislature would have us conclude that robbery is a violent felony while aggravated robbery is not. This court seeks to avoid absurd results otherwise occasioned by strained interpretations, and would follow the general principles acknowledged in *State v. Stern,* Wyo., 526 P.2d 344 (1974):

"* * * that where legislative intent is discernible a court should give effect to that intent, *Woolley v. State Highway Commission* (Wyo.1963), 387 P.2d 667, 673; * * * and that while generally speaking penal statutes are to be strictly construed, they need not be given over narrow meanings in disregard of the obvious purpose of the legislative body, *U.S. v. Bass* (1971), 404 U.S. 336, 351, 92 S.Ct. 515, [524] 30 L.Ed.2d 488." 526 P.2d at 346–347.

Affirmed.