**Iassac Orlando PEARSON,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 91–13.**

Supreme Court of Wyoming.

Oct. 21, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Darold S. Melchior, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Jennifer L. Gimbel, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director of the Prosecution Assistance Program, E. Daniel Farrar, Student Intern for the Prosecution Assistance Program, and John P. Labuda, Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellant Iassac Orlando Pearson challenges his conviction for aggravated vehicular homicide, asserting the district court improperly admitted as evidence an involuntary admission he made to a police officer while he was under arrest and hospitalized with severe injuries. He also contests his conviction for felony wrongful taking or disposing of property because the district court refused to instruct the jury on the elements of the misdemeanor of that crime.

We affirm.

Pearson states these issues:

I. Whether the prosecutor violated the discovery requirements as set forth in Rule 18 of the Wyoming Rules of Criminal Procedure by withholding from Appellant State's knowledge of a confession made by Appellant, even after Appellant specifically requested production of such information in his motion for discovery and inspection.

II. Whether the trial court committed reversible error when it refused to instruct the jury on the lesser included offense of wrongful taking or disposing of property as set forth in Wyo.Stat. § 6-3-403(a)(iii) (1977).

Pearson and a cohort stole a car in the early morning hours of June 10, 1990, which was parked in front of a nightclub in Fort Collins, Colorado. Pearson drove the stolen car to Cheyenne later that morning. During the early evening hours of June 10th, Pearson was seen in Cheyenne driving the stolen car at high rates of speed,

passing through red lights, and weaving through traffic. At approximately 10:20 p.m., he was driving the stolen vehicle without its headlights being turned on and at a high rate of speed westbound on 19th Street when he drove through a red light and rammed the driver's side of an automobile which was southbound on Logan Avenue. An accident reconstruction expert testified Pearson was traveling at a minimum speed of fifty-seven miles per hour at the time of the collision and the other vehicle was traveling at nineteen miles per hour. At the intersection of westbound 19th Street and Logan Avenue, a driver proceeding westbound on 19th Street does not have the option of continuing through that intersection in a westbound direction because 19th Street becomes an eastbound, one-way street.

The driver of the other automobile died at the scene of the accident. Pearson was seriously injured and was transported to Memorial Hospital of Laramie County for treatment. He was carrying a Wyoming driver's license which identified him as Thomas Sabado. Police Officer Greg Ball was assigned to guard Pearson while he was in the hospital. Hospital personnel informed Officer Ball that the injured person being treated by them had identified himself as Iassac Pearson, rather than as Thomas Sabado. Sabado's mother was summoned to the hospital, and, when she arrived, Officer Ball informed her the injured party was not her son. Upon being informed the injured person was not Sabado, Officer Ball initiated a brief conversation with Pearson:

Q (BY MR. TRISTANI) Well, you thought you had Thomas Sabado, now you find it's Iassac Pearson?

A Yes, sir.

Q What did you do then?

A I asked him again to clarify that his name was Iassac Pearson and he repeated it again.

Q And so you were somewhat surprised by that?

A Yes, sir.

Q Did you ask any other questions after that?

A No, sir. I asked—I verified that that was not—was not him.

Q Okay. Did he then make any statements or ask any questions?

A Not at that particular point in time.

Q Okay. Did there come a time that he did?

A He asked what happened to the other people.

Q Okay. And then how did you respond?

A I asked him specifically what other people, and he said—and he hesitated, and then he said in the other car. And I told him that the person in the other car was dead.

Q How did he respond to that?

A He began half sobbing and said, quote, unquote, "I fucked up."

Q And about how many times did he say that or words similar to that?

A Approximately three times, two times to me and one * * * when his mom and dad w[ere] present.

Cross-examination revealed that Officer Ball did not record in his report the fact Pearson had made these statements. Officer Ball testified he may not have recognized the significance of the statements at the time but, when he realized the case was going to trial, he thought more about the details of what happened the night of the accident.

Although no objection was made at the time this testimony came to the attention of the jury, Pearson moved for a mistrial. At a hearing held before the court, without the presence of the jury, Officer Ball was again called to testify. He repeated the testimony in virtually the same manner as he had done earlier before the jury, adding that, in addition to asking Pearson his name, he also asked for his address. Pearson asked Officer Ball about the others:

Q And then he said?

A Then I answered, "What others?" And he said—he wouldn't answer—"You mean the others in the other vehicle?" He said yes, and I said, "Well, he's dead." And he half sobbing said, "I really fucked up." And also something I

didn't mention yesterday. He did say this to me, "What does this mean? Does this mean I am going to jail?" He asked me that.

Q What did you say?

A I said that's entirely up to the Judge. I have no way of knowing. I don't know.

Officer Ball acknowledged that Pearson was under arrest at the time Pearson made the statements and that he had not read the *Miranda* rights to Pearson. Officer Ball related that, although Pearson was injured, he was coherent, and Officer Ball was able to understand him. Officer Ball testified he told the district attorney about these events approximately one week before Pearson's trial began.

### The Confession

Pearson alleged at trial, and he iterates that argument here, that the admissions he made were the result of a custodial interrogation which was not preceded by a voluntary and knowing waiver of his *Miranda* rights. Pearson claims the statements he made to Officer Ball were not disclosed to counsel for the defense even though such statements were requested by the defense in a motion for discovery and inspection. The State contended the statements were not in the nature of a confession and it had no duty to disclose the statements. If defense counsel wanted to inquire further of the State's witnesses, it was at liberty to do so.

The district court essentially agreed with the State and denied the motion for mistrial.

■ Pearson's argument appears to go only to whether the State complied with the defense's discovery request as prescribed in W.R.Cr.P. 18. Our decision in *Osborne v. State*, 806 P.2d 272 (Wyo.1991), is dispositive. No order for discovery and inspection was ever issued by the district court. Absent such an order, we cannot hold the State's failure to disclose its knowledge of Pearson's statements was improper. Pearson filed a motion for such an order, but none was issued because the State agreed to permit free inspection of its file and to provide the defense with an exhaustive list of proposed and potential witnesses. The statements at issue were not in the file and would have been discoverable only upon colloquy with Officer Ball. Pearson also claims the State had an obligation under W.R.Cr.P. 18(h) to inform the defense of the statements once the State was aware of their existence.

■ In his brief, Pearson characterizes the disputed statements as a "confession." The statements are not a confession because they do not contain an acknowledgment of guilt of committing a crime, nor do they establish a fact from which commission of the crime might be inferred. *State v. Osmus*, 73 Wyo. 183, 276 P.2d 469 (1954); 23 C.J.S., *Criminal Law* § 878 (1989); Black's Law Dictionary 269 (5th ed. 1979). In the case at bar, Officer Ball did not initiate a conversation with Pearson. He merely sought his name and address in order to confirm his identity as being someone other than Thomas Sabado. Officer Ball did not treat the questions asked by Pearson as an opportunity to open up a generalized discussion of the crimes for which Pearson was ultimately convicted.

■ Admission of the statements was, at worst, harmless error. W.R.A.P. 7.04; *Price v. State*, 807 P.2d 909 (Wyo.1991). The evidence against Pearson was overwhelming. A number of people witnessed all or part of the accident, as well as Pearson's conduct on the streets of Cheyenne immediately prior to the accident.

The district court did not err in denying Pearson's motion for a mistrial. The disputed statements were not a confession or an admission, nor was the State's failure to apprise Pearson prior to trial of the statements' existence an act of misconduct under the governing authorities.

### The Lesser–Included Offense Instruction

Pearson contends the district court erred in not giving the following offered instruction:

Pertinent portions of the Wyoming statutes provide as follows:

"(a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of a misdemeanor ... if the value of the property is less than $500.00."

The owner of the automobile stolen by Pearson testified she would not accept an offer of less than $1,500 for the automobile. She based her testimony upon her knowledge of the amount she had paid for the car and the condition the car was in prior to the time it was stolen, as well as upon her experience with preparing and reading classified advertisements in the Laramie, Wyoming, newspaper. This information enabled her to discern that the selling price for a car of the make, model, and year of her car would be not less than $1,500.

Pearson testified he would not pay more than $200 to $300 for the car he stole. At the close of all the evidence, the jury was directed not to consider that testimony given by Pearson concerning the value of the stolen car in arriving at its verdict. Various witnesses, mostly the police officers who investigated the case, testified the car was not in very good condition and not very well maintained. Of course, only one of those officers saw the car before it was wrecked, and he saw it only fleetingly, at night, in Fort Collins, Colorado.

In *Eatherton v. State*, 761 P.2d 91, 94–95 (Wyo.1988), *after remand* 810 P.2d 93 (Wyo.1991) (quoting *Miller v. State*, 755 P.2d 855, 865 (Wyo.1988)), we reiterated our five-part test as to when a lesser-included offense instruction is required:

"(1) a proper request [for the instruction] is made; (2) the elements of the lesser-included offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser-included offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) mutuality exists such that the lesser-included charge can be demanded by either the prosecution or the defense."

 Our focus is on elements (3) and (4). The owner of the stolen vehicle testified to the vehicle's value at the time of the theft, and she gave a rational basis for her opinion. The preferred method of establishing value in a case such as this is to determine the market value. *Reposa v. Buhler*, 770 P.2d 235 (Wyo.1989); *O's Gold Seed Company v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673 (Wyo.1988). However, where an owner has sufficient knowledge to establish the value of his own property, he may properly serve as a witness. *Roose v. State*, 759 P.2d 478 (Wyo.1988); *Blessing v. Pittman*, 70 Wyo. 416, 251 P.2d 243 (1952); Annotation, *Admissibility of Opinion of Nonexpert Owner as to Value of Chattel*, 37 A.L.R.2d 967 at § 28 (1954). *See also* W.R.E. 602 and 701.[1] In this case, adequate foundation existed to sustain admission of the owner's opinion as to the value of the stolen car, as well as to sustain the jury's verdict that the value of the car exceeded $500.

 The opposite is true of Pearson's testimony. The district court properly instructed the jury to disregard his opinion since no basis for his opinion was elicited from him. Pearson's "opinion" was simply pulled out of the air and was self-serving only. Pearson had no personal knowledge. He did not base his opinion upon a rational perception. In the final equation, the only

---

1. W.R.E. 602 provides:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

W.R.E. 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

competent evidence of the value of the stolen car was that given by the owner. The district court did not err in refusing to give the lesser-included offense instruction.

Affirmed.