**Roy L. SMITH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–168.

Supreme Court of Wyoming.

July 31, 1996.

Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; Donna D. Hoffdahl, Assistant Appellate Counsel, Wyoming Public Defender Program, for appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Assistant Attorney General; Prosecution Assistance Program, Theodore E. Lauer, Director, and Jason M. Tangeman, Student Intern, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The issue presented by this appeal is whether a proportionality analysis, comparing the sentence imposed with other sentences for the same offense, should be invoked to determine that the trial court abused its discretion in imposing a sentence. Roy Leroy Smith (Smith) was sentenced to a term of eighteen to twenty years for aggravated vehicular homicide. He appealed from this sentence, contending it is the most severe sentence that could be imposed under the statute, and it is dramatically dispropor-

tionate to the sentences imposed in other cases for the same offense as disclosed by reported decisions of this court. We hold we will adhere to our rule that we will not undertake a proportionality analysis "except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense * * *." *Oakley v. State*, 715 P.2d 1374, 1379 (Wyo. 1986). The Judgment and Sentence is affirmed.

In his Brief of Appellant, Smith states the issue in this way:

> Did the trial court err when it imposed a sentence which is not proportionate to other sentences received by defendants convicted of aggravated vehicular homicide?

In the Brief of Appellee, the State of Wyoming offers this as the appropriate way to frame the issue:

> Whether the district court abused its discretion by sentencing appellant to a term of eighteen (18) to twenty (20) years in the Wyoming State Penitentiary for the crime of aggravated vehicular homicide, in violation of W.S. § 6–2–106?

On the night of September 28, 1994, Smith and his prospective brother-in-law (brother-in-law) were traveling from Riverton to Casper to spend the weekend with their fiancées. Prior to their journey, Smith and the brother-in-law were drinking in a bar in Riverton after getting off work. On the way to Casper, they stopped to have a drink in Shoshoni. After leaving Shoshoni, Smith began driving on the wrong side of the road at times and he, obviously, was intoxicated. While driving in the wrong lane of traffic, Smith was involved in a head-on collision.

The driver of the other car was killed, and Smith's brother-in-law was severely injured.

The brother-in-law gave a statement to the Wyoming Highway Patrol in which he said:

> We had a little bit too much to drink. Leroy [Smith] was saying he could be on the road because he paid taxes on it. I didn't argue with him because he had been drinking so much and I know how mean he gets when he has been drinking. If he would see a car coming, he would get back over in the other lane. Well, then he thought it was funny because people would kind of swerve a little bit. Well, he got going and he saw this car coming when we were about 20 miles outside of Powder River, coming this way, and we saw this car coming. Leroy [Smith] got over, in other words, into this on-coming lane of traffic, and I saw the guy wasn't swerving at all. I said, "Hey man, come on, get back over. He ain't going over." Leroy [Smith] said, "He will go over. He is not going to have a headon, he will go over." He never went over and we had a headon collision at that point.

Smith's blood alcohol content was determined at a later time to be 0.19 percent. By his own account, Smith had consumed "two pitchers of beer, a 12 pack of beer, shots of alcohol, and a pint of schnapps prior to getting behind the wheel of that vehicle."

Smith was charged with aggravated vehicular homicide in violation of WYO. STAT. § 6–2–106(b)(i) and (ii) (1995),[1] by driving his vehicle while intoxicated and in a reckless manner, which caused the death of another, and aggravated assault and battery in violation of WYO. STAT. § 6–2–502(a)(i) (1988),[2] by engaging in reckless conduct manifesting extreme indifference to human life and causing

---

1. WYO. STAT. § 6–2–106 (1995) provides, in pertinent part:

   (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
   (i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–13–206, he causes the death of another person and the violation is the proximate cause of the death; or
   (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the

   proximate cause of the death of another person.

2. WYO. STAT. § 6–2–502 (1988) provides, in pertinent part:

   (a) A person is guilty of aggravated assault and battery if he:
   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; * * *.

bodily injury to his brother-in-law. Following a preliminary examination, Smith was bound over on both counts to the district court for trial. Initially, he entered not guilty pleas to both counts, and he was released on a $1,000 cash bond. Later, Smith changed his pleas to pleas of guilty on both counts charged in the information. No plea agreement or arrangement had been entered into and, after accepting the pleas of guilty, the district court ordered and received a presentence investigation report. At sentencing, the court imposed concurrent terms of imprisonment. Smith was sentenced to a term of not less than eighteen, nor more than twenty, years for the aggravated vehicular homicide violation and to not less than eight, nor more than ten, years for the aggravated assault and battery violation. Smith appealed from the judgment and sentence on May 3, 1995. Later, he moved for a reduction of his sentence, and the district court denied that motion on October 2, 1995.

Smith contends the district court committed an abuse of discretion in imposing the maximum sentence of twenty years for aggravated vehicular homicide. The minimum term the court imposed was the greatest minimum term possible, pursuant to WYO. STAT. § 7–13–201 (1987).[3] The premise of Smith's claim is that his sentence is dramatically disproportionate to sentences imposed on other defendants convicted of the same crime. He contends the imposition of such a sentence constitutes an abuse of discretion, and he relies upon *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). He asserts the proportionality analysis articulated in *Solem* should have been applied in this instance and, had it been, it would have demonstrated his sentence was disproportionately "cruel and unusual" under the Eighth Amendment to the United States Constitution.

**3.** WYO. STAT. § 7–13–201 (1987) provides:
Except where a term of life is required by law, or as otherwise provided by W.S. 7–13–101, when a person is sentenced for the commission of a felony, the court imposing the sentence shall not fix a definite term of imprisonment but shall establish a maximum and minimum term within the limits authorized for

■ Our rule is, when the imposition of a criminal sentence by a trial court is within the limits set by the legislature, the sentence will not be overturned, absent a clear abuse of discretion. *Young v. State,* 904 P.2d 359 (Wyo.1995); *Wilson v. State,* 896 P.2d 1327 (Wyo.1995); *Candelaria v. State,* 895 P.2d 434 (Wyo.1995); *YellowBear v. State,* 874 P.2d 241 (Wyo.1994); *Eustice v. State,* 871 P.2d 682 (Wyo.1994); *Betzle v. State,* 847 P.2d 1010 (Wyo.1993). This is consistent with the common law rule, but we do maintain a window of reviewability, even when the trial court has imposed a legally-prescribed sentence. *Wright v. State,* 670 P.2d 1090 (Wyo.1983).

■ This window of reviewability, as described in *Wright,* 670 P.2d at 1092 (quoting *Scheikofsky v. State,* 636 P.2d 1107, 1113 (Wyo.1981)), is:

A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

We went on to quote our definition of abuse of discretion from *Martinez v. State,* 611 P.2d 831, 838 (1980):

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.

*Wright,* 670 P.2d at 1092.

In assessing the reasonableness of the sentence, consideration is to be given to the

the statute violated. The maximum term shall not be greater than the maximum provided by law for the statute violated, and the minimum term shall not be less than the minimum provided by law for the statute violated, nor greater than ninety percent (90%) of the maximum term imposed.

crime and its circumstances and the character of the criminal. *Wright.*

▮ Smith insists, however, that our analysis should not end with the application of our precedents. He seeks the application of the three factors applied by the Supreme Court of the United States in *Solem*, 463 U.S. at 292, 103 S.Ct. at 3011, to determine whether a specific punishment violates the Eighth Amendment, which are:

> In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

Smith's reliance upon *Solem* fails to account for the dialogue among the members of the Supreme Court of the United States in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In that case, a plurality of the court appears to have adjusted its approach to the situations in which the *Solem* factors should be applied. In *Harmelin*, a mandatory term of life imprisonment, without possibility of parole, was affirmed in a situation in which the defendant was convicted of possessing 672 grams of cocaine.[4]

Two justices, writing in *Harmelin*, would have limited proportionality review to capital cases. Three of the members of the court concluded the *Solem* proportionality analysis is appropriate only "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707. Those justices agreed that the "proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime." *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707. They concluded by stating:

> In light of the gravity of petitioner's offense, a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence with others in Michigan and across the Nation need not be performed.

*Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707.

We have anticipated the *Harmelin* approach in spirit, if not in the precise language, in *Wright* and, more recently, in *Oakley*, 715 P.2d at 1379, where we said:

> We will not engage in a lengthy analysis under all three of the *Solem* criteria, including a consideration of the sentences imposed on similarly situated defendants in this and other jurisdictions, except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense (the first of the *Solem* criteria). Oakley's sentence does not merit that kind of in-depth *Solem* analysis, and the *Solem* opinion does not require that kind of analysis in a case such as this.

In *Wright*, the crime, its attendant circumstances, and the criminal's character were considered in analyzing the question of abuse of discretion in sentencing.

Applying *Wright* and *Oakley*, focusing upon the gravity of the offense and the procedure and circumstances under which the sentence is imposed, leads to the threshold determination that there was no abuse of sentencing with respect to Smith. This is not the rare case in which the factors identified above should lead to a comparison of other sentences for the same crime. It does not encompass the inference of gross disproportionality described in *Harmelin*. There is no manifest abuse of discretion, suspicious procedural conduct, circumstances manifesting inherent unfairness or injustice, or conduct offensive to the public sense of fair play, as those factors are described in *Wright*. It does not involve a mode of punishment that

---

**4.** The defendant was convicted under MICH. COMP. LAWS ANN. § 333.7403(2)(a)(i) (West.Supp.1990–1991), which provides a mandatory sentence of life in prison for possession of 650 grams or more of "any mixture containing [a schedule 2] controlled substance"; § 333.7214(a)(iv) defines cocaine as a schedule 2 controlled substance.

is unusual, nor is the relative length of sentence extreme when compared to the gravity of the offense, described in *Oakley*.

We have a crime resulting in the death of another human being. Longer sentences are appropriate in crimes of violence against the person as compared with crimes against property. The underlying circumstances are tragic and deplorable. Smith's blood alcohol content was almost twice the statutory limit, and he was engaged in forcing oncoming traffic to swerve before he returned to his proper lane of traffic when the fatal accident occurred. Smith refused to listen to warnings from his brother-in-law, suggesting his conduct was reckless and dangerous, and lives were needlessly put in peril because of his gross irresponsibility. The extreme recklessness of the circumstances surrounding this crime reasonably give rise to a heavier sentence.

Smith's character also fails to recommend itself to the court and tends to justify the sentence imposed. His background includes five convictions for public intoxication between 1991 and the date of this crime. There appears to have been a torturous history of alcohol abuse. In addition, Smith had been convicted for forgery and shoplifting and received a dishonorable discharge from the Army National Guard. His removal from society by the imposition of the greater sentence is reasonable because it does protect the public. We cannot say, under these circumstances, that this sentence "exceeds the bounds of reason." *Wright*, 670 P.2d at 1092. We are unable to make any threshold determination that the trial court imposed an inappropriate sentence. In fact, Smith committed a grossly reckless act, which caused the death of another person, and it was accomplished under circumstances manifesting at least extreme recklessness and disregard for the value of human life. Indeed, Smith may have received the full measure of grace when he was prosecuted for aggravated vehicular homicide rather than murder.

Smith demonstrates no procedural error suggesting prejudice to him, nor has he shown the sentence was a retaliatory act resulting in unfairness or injustice. The eighteen- to twenty-year sentence imposed in this case neither shocks the conscience nor offends the public sense of fair play. Instead, the trial court reasonably imposed a sentence tailored to the circumstances of Smith's crime and Smith's character.

Because a comparison of Smith's crime gives rise to no inference of gross disproportionality, we conclude a proportional analysis of Smith's sentence compared with others in Wyoming or across the country is not required. *See Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707. The trial court did not abuse its discretion in imposing sentence, and its Judgment and Sentence is affirmed.