2000 WY 12

**Quay A. SAMPSELL, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00–19.

Supreme Court of Wyoming.

Feb. 2, 2001.

Representing Appellant: G. Kevin Keller, Cheyenne, WY.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Senior Assistant Attorney General; and Shawn Matlock, Student Intern.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL and KITE, JJ.

THOMAS, Justice.

[¶ 1] The only claim of error advanced by Quay Sampsell (Sampsell) in this appeal is that the district court committed an abuse of discretion and transgressed the concept of proportionality in imposing sentence upon his conviction, pursuant to his pleas of guilty, of two counts of aggravated vehicular homicide in violation of Wyo.Stat.Ann. § 6–2–106(b) (Lexis 1999).[1] In both counts, Sampsell was charged with causing the death of the victim

---

1. Wyo.Stat.Ann. § 6–2–106(b) provides:

    (b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if:
    (i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–

13–206, he causes the death of another person and the violation is the proximate cause of the death; or
    (ii) He operates or drives a vehicle in a reckless manner, and his conduct is the proximate cause of the death of another person.

while driving under the influence of alcohol. On each count, Sampsell was sentenced to a term of not less than six (6) years and not more than ten (10) years in the penitentiary, with an oral pronouncement that the two sentences should be consecutive. The sentences are within the statutory limits prescribed by the legislature for the charged offenses, and the district court neither committed an abuse of discretion nor imposed a disproportionate sentence in this instance. We affirm the Judgment and Sentence of the Court.

[¶ 2] This statement of the issues is found in the Appellant's Brief:

I. Whether the trial court abused its discretion by imposing an excessive sentence based on a presumption that the appellant "willfully" committed the crime of aggravated vehicular homicide.

This Statement of the Issue is found in the Brief of Appellee:

I. Whether the district court abused its discretion in sentencing appellant to consecutive terms of six (6) to ten (10) years for two counts of aggravated vehicular homicide, in violation of Wyo. Stat. § 6–2–106?

[¶ 3] On May 13, 1999, Sampsell ran a flashing red light at the intersection of West College Drive and South Greeley Highway in Cheyenne. He collided with another vehicle, and the driver and the passenger in that car both were killed. At the time of the collision, Sampsell had a blood alcohol level of approximately .217. He had spent the evening drinking with friends at a Cheyenne bar. Charged with two counts, one for each of the victims, of aggravated vehicular homicide by causing the death of the victims while driving under the influence of alcohol, Sampsell entered a plea of guilty to each count at his arraignment.

[¶ 4] In providing a factual basis for his pleas of guilty, Sampsell advised the district court that he had been drinking at a Cheyenne bar. He stated that he left, and did not remember how he arrived at the scene of the collision. He stated that he ran a red light and struck the other vehicle. He agreed that he drove his vehicle after consuming alcohol.

Through counsel, Sampsell told the district court that he would not disagree as to the evidence of the location of the collision, and he admitted the date. Sampsell's counsel also told the district court that Sampsell would not contest the evidence that his blood alcohol level was .217 at the time. Sampsell also agreed that the collision caused the deaths of the two victims.

[¶ 5] After receiving a pre-sentence report, and hearing statements from Sampsell; a jail chaplain; a clinical psychologist; Sampsell's father; the parents of the male victim; the mother and stepfather of the female victim; and counsel for the defense and prosecution, the district court proceeded to impose sentence. The district court said:

Having considered these things, I believe that the appropriate sentence is and the Court does hereby impose a sentence of no less than six years nor more than ten years on each of the two counts to be served consecutively, and Mr. Sampsell will be remanded to the custody of the sheriff for the execution of that sentence.

The Judgment and Sentence of the Court is silent as to whether the sentences were imposed to run consecutively or concurrently. Our rule is clear with respect to such discrepancies:

We have held that, when a discrepancy exists between the oral pronouncement and the written order, the oral pronouncement prevails. *Lane v. State,* 663 P.2d 175, 176 (Wyo.1983).

*Smith v. State,* 985 P.2d 961, 963 (Wyo.1999). *See also Van Riper v. State,* 882 P.2d 230, 238 (Wyo.1994) (*quoting Schuler v. State,* 668 P.2d 1333, 1341 (Wyo.1983)); *Christensen v. State,* 854 P.2d 675, 678 (Wyo.1993) (*quoting United States v. Pugliese,* 860 F.2d 25, 30 (2d Cir.1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989)); *Krow v. State,* 840 P.2d 261, 265 (Wyo.1992); *McGraw v. State,* 770 P.2d 234, 235 (Wyo. 1989); and *Fullmer v. Meacham,* 387 P.2d 1007, 1009 (Wyo.1964). Sampsell has appealed from the Judgment and Sentence of the Court, and his stance in the appeal correctly assumes that the sentences were imposed to run consecutively.

[¶ 6] Sampsell points out that this Court has rejected the common-law view that a sentence is not subject to appellate review if it is within the minimum and maximum limits set by statute. *Wright v. State*, 670 P.2d 1090, 1091 (Wyo.1983). Two years later, the standard was explained in *Volz v. State*, 707 P.2d 179, 184 (Wyo.1985):

> The standard this court follows on review of sentencing is well established. This court will not reverse a sentence which is within the statutory limits absent a clear abuse of discretion. *Kallas v. State*, Wyo., 704 P.2d 693 (1985); *Wright v. State*, Wyo., 703 P.2d 1102 (1985); *Munden v. State*, Wyo., 698 P.2d 621, 626 (1985); *Young v. State*, Wyo., 695 P.2d 1055, 1057 (1985); *Jahnke v. State*, Wyo., 692 P.2d 911, 930 (1984); *Jahnke v. State*, Wyo., 682 P.2d 991, 1008 (1984); *Ventling v. State*, supra, 676 P.2d [573] at 574 [(Wyo.1984)]; *Eaton v. State*, Wyo., 660 P.2d 803, 806 (1983); *Taylor v. State*, Wyo., 658 P.2d 1297, 1299 (1983); *Wright v. State*, Wyo., 670 P.2d 1090, 1092 (1983); *Daniel v. State*, supra, 644 P.2d [172] at 178 [(Wyo.1982)]; *Cyrus v. State*, Wyo., 639 P.2d 900, 903 (1982); *Scheikofsky v. State*, Wyo., 636 P.2d 1107, 1112 (1981); *Jones v. State*, Wyo., 602 P.2d 378, 380 (1979); *Hanson v. State*, Wyo., 590 P.2d 832, 836 (1979); *Smith v. State*, Wyo., 564 P.2d 1194, 1202 (1977); *Daellenbach v. State*, Wyo., 562 P.2d 679, 683 (1977); *Bird v. State*, 36 Wyo. 532, 257 P. 2, 3 (1927); *State v. Sorrentino*, 36 Wyo. 111, 253 P. 14, 16 (1927).

This court in *Ventling v. State*, supra, reiterated the definition of "abuse of discretion" which applies to sentencing review:

> " " "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * * " " ' *Wright v. State*, supra, 670 P.2d at 1092, quoting *Martinez v. State*, Wyo.,

611 P.2d 831, 838 (1980)." [*Ventling*] 676 P.2d at 575.

While sentencing involves consideration of two broad categories—the circumstances surrounding the crime, and the character of the criminal, *Young v. State*, supra, 695 P.2d at 1057; *Ventling v. State*, supra, 676 P.2d at 575—after reviewing the record, we hold that the trial court gave proper consideration to both of these categories.

[¶ 7] Sampsell first argues that the sentences that were imposed demonstrate an abuse of discretion. He contends that the prosecuting attorney and the district court judge focused on the willfulness of the offense, and points out that, of course, willfulness is not an element of the crime charged. In pressing this argument, Sampsell relies upon an interpretation of the record that is different from our understanding. We quote from the comments of the prosecuting attorney:

> The conduct of Mr. Sampsell that night was willful, there's no other way to describe it, and it was incredibly reckless. He chose to go out drinking that [night] with all of his friends from the base. He knew, like any law enforcement officer, he was indeed a security policeman at the base, about what the laws are and what they are not and how incredibly strict they are out at the base about drunk driving. His friends knew that, so they had taken a designated driver that night when they went out to [the bar]. You don't see that in this pre-sentence report. It's a very cold, sterile pre-sentence report.

> And it's hard to try—I'm glad the families are here to give you a flavor of emotion of their children's lives, and the best I can do is try to help you understand the events of that night.

> [The male victim's mother] indicated her son was at Perkins having dinner while Mr. Sampsell was getting drunk with friends at [the bar]. They went there, they drank for hours. They had a designated driver, took him back to the base, but he wanted to party. He wanted to go all the way down to Fort Collins, but he

couldn't get anybody foolish enough to go out with. They tried to get him to stay. He chose to go, he chose to go back to [the bar], he chose to start drinking [their] massive, I believe, 25–ounce micro brews that by his count he pounded down eight or ten. Blood alcohol tells us .21. But we know he had been drinking continuously for at least five hours.

So he went back to [the bar] and continued to drink. He was making a very willful, conscious and deliberate choice. He drank there for several more hours, tried to pick up on a girl who turned him down. This apparently angered him. When everybody was leaving, they tried to get the keys away from him, but he would have nothing to do with that. He tried to fight one individual that tried to get the keys from him, pushed his way out of the bar, jumped into his truck, not only sped away, he ran through, by the witnesses' descriptions, red lights, and he was trying to get away from the friends that were trying to help him. He chose to drive east on Dell Range, not west, not back to the base, but he chose to race down the road driving his, as we have heard the description, this Dodge Dakota truck he was very proud of. But it was within moments to become a 3,000 plus pound projectile that smashed into the side of [the male victim's] car as he was innocently going through an intersection taking [the female victim] home.

* * * That [the prosecuting attorney graphically described the collision] was the result of the willful and deliberate action of Mr. Sampsell.

* * *

* * * But that's what you have to take into account, all of his willful, deliberate, reckless choices he made that night that we are now trying to hold him accountable for.

[¶ 8] The comments of the district court judge are also significant. He responded to the prosecuting attorney's remarks by saying:

> I think it's true what [the jail chaplain] has said here, * * * and [defense counsel], and Mr. Sampsell himself and others, Mr. Sampsell did not intentionally take the lives of [the male victim] and [the female victim], but he intentionally and willfully got into his truck. And what makes it especially egregious, I believe, is that, as [the prosecuting attorney] indicated or according to the pr[e]sentence investigation report, Mr. Sampsell was repeatedly and specifically warned and admonished by his friends that he shouldn't drive. And he was offered a place to stay, a place to sleep and sleep it off. He rejected those offers, which, of course, is a result of the same alcohol that led to the recklessness of his conduct that killed these two people.

[¶ 9] The record is clear that the district court did not believe that Sampsell had willfully committed the homicides charged, but that it was focused on the willfulness of his conduct in driving his vehicle while intoxicated. It is equally clear that in imposing the sentences in this case, the district court took into account the circumstances of the crime and Sampsell's character. The State points out that the maximum punishment provided in Wyo.Stat.Ann. § 6–2–106 is twenty years, and the sentences should not be disturbed in the absence of an abuse of discretion. There was no abuse of discretion by the district court in this case, and we do not afford relief to a defendant unless the proper showing of abuse has been made.

[¶ 10] Sampsell contends that "[i]ntertwined in this review is a proportional review of the actual sentence imposed as a violation of equal protection and the prohibition against cruel or unusual punishment." In pressing this argument, he relies upon *Oakley v. State*, 715 P.2d 1374, 1376 (Wyo.1986). Sampsell asserts that the sentences are unusually severe when compared to the sentences involved in other aggravated vehicular homicide cases. In his appellate brief, he analyzes a number of our prior cases.[2] His

2. Sampsell has included in this analysis: *Rogers v. State*, 971 P.2d 599 (Wyo.1999); *Smith v. State*, 922 P.2d 846 (Wyo.1996); *Pearson v. State*, 818 P.2d 1144 (Wyo.1991); *Whitfield v. State*, 781 P.2d 913 (Wyo.1989); *Volz*, 707 P.2d 179; *Hodgins v. State*, 706 P.2d 655 (Wyo.1985); and *Felske v. State*, 706 P.2d 257 (Wyo.1985).

point of departure for the proportionality argument is language from *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983), quoted by this Court in *Oakley*, 715 P.2d at 1376–77:

"In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

The State, in response, reminds this Court of the constraints we adopted in *Oakley*, 715 P.2d at 1379:

We will not engage in a lengthy analysis under all three of the *Solem* criteria, including a consideration of the sentences imposed on similarly situated defendants in this and other jurisdictions, except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense (the first of the *Solem* criteria). Oakley's sentence does not merit that kind of in-depth *Solem* analysis, and the *Solem* opinion does not require that kind of analysis in a case such as this.

We have expanded upon *Oakley* in subsequent cases, saying:

However, this court has adhered to the rule that we will not undertake a lengthy analysis under all three of the *Solem* criteria "except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense." *Oakley v. State*, 715 P.2d 1374, 1379 (Wyo.1986); *Smith v. State*, 922 P.2d at 849. Our rule is in accord with the approach taken by the United States Supreme Court in *Harmelin v. Michigan*, where the court concluded that the *Solem* proportionality analysis is appropriate only "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." [*Harmelin*] 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707,

115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).

*Dodge v. State*, 951 P.2d 383, 385 (Wyo.1997). This application of *Oakley* is still followed by this Court. *Suval v. State*, 6 P.3d 1272, 1274 (Wyo.2000).

[¶ 11] It is clear from the record that the mode of punishment imposed in this case is not unusual, and we are satisfied that the relative length of the sentence is not extreme in light of the circumstances disclosed by the record. We see no occasion to deviate from what we said in *Smith*, 922 P.2d at 849–50:

There is no manifest abuse of discretion, suspicious procedural conduct, circumstances manifesting inherent unfairness or injustice, or conduct offensive to the public sense of fair play, as those factors are described in *Wright* [670 P.2d 1090]. It does not involve a mode of punishment that is unusual, nor is the relative length of sentence extreme when compared to the gravity of the offense, described in *Oakley* [715 P.2d 1374].

[¶ 12] The Judgment and Sentence of the Court is affirmed.