2007 WY 130

**Raul GARAY, Jr., Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–220.**

Supreme Court of Wyoming.

Aug. 10, 2007.

---

Representing Appellant: Jack Vreeland of Evanston, Wyoming; and Robert M. Archuleta of Salt Lake City, Utah. Argument by Mr. Archuleta.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant contends that there was insufficient evidence to support his conviction for third-degree sexual assault. We affirm.

## STANDARD OF REVIEW

■■■ [¶ 2] Our standard for reviewing a sufficiency of the evidence claim is as follows:

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Kenyon v. State*, 2004 WY 100, ¶ 14, 96 P.3d 1016, 1022 (Wyo.2004) (quoting *May v. State*, 2003 WY 14, ¶ 11, 62 P.3d 574, 578 (Wyo. 2003) (citations and quotation marks omitted)). Stated somewhat differently, with emphasis upon witness credibility determinations, our standard of review has been identified as follows:

> When the issue of sufficiency of the evidence is raised on appeal, this Court must respect the role of the fact-finder, in this case the jury, to weigh the credibility of the respective witnesses. A jury is entitled to weigh and disregard any evidence intended to discredit the witnesses for the State. *Broom v. State*, 695 P.2d 640, 642 (Wyo.1985). This Court does not second-guess the credibility determinations of the jury. *Estrada–Sanchez v. State*, 2003 WY

45, ¶ 6, 66 P.3d 703, ¶ 6 (Wyo.2003). To that end, this Court must presume that the jury resolved any conflict in the evidence in favor of the prosecution. *McFarlane v. State*, 2001 WY 10, ¶ 4, 17 P.3d 31, ¶ 4 (Wyo.2001). Ultimately, in order to preserve the role of the fact-finder, this Court does not review the record evidence to determine if it agrees with the verdict, but rather the critical inquiry of this Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Ekholm v. State*, 2004 WY 159, ¶ 18, 102 P.3d 201, ¶ 18 (Wyo.2004); *Tanner v. State*, 2002 WY 170, ¶ 7, 57 P.3d 1242, ¶ 7 (Wyo.2002). *Leyo v. State*, 2005 WY 92, ¶ 11, 116 P.3d 1113, 1116–17 (Wyo.2005).[1]

## FACTS

[¶ 3] The standard of review just elucidated requires us to set forth the facts shown in the trial record in the light most favorable to the State. Because the victim in this case is a minor, and because many of the witnesses also were minors, and because many of the witnesses share the same surname, we will refer to the victim as "the victim," we will identify witnesses by their given name, and we will refer to Mr. Garay as "the appellant."

[¶ 4] On August 10, 2005, the victim traveled from Salt Lake City, Utah, to Worland, Wyoming, to visit a cousin, Shantell. On the evening of August 12, 2005, the victim and Shantell went to the appellant's house to babysit. The appellant is also the victim's cousin. The appellant left the residence, returning later with T.J. and Jamie. The appellant and T.J. then left to buy alcohol with money given them by Shantell. They returned with a bottle of vodka, from which both the victim and the appellant began to drink.

[¶ 5] At some point, the victim and Shantell went to Mark's house, where they were later picked up by the appellant and T.J. The four of them drove around town, with the appellant and the victim continuing to drink vodka, while the victim sat on the appellant's lap in the back seat. Along the way, they picked up T.C. and Enrique, whose vehicle had broken down along the road. They then drove to the Rendezvous Lounge, where they picked up Jackie.

[¶ 6] The group next went to Jackie's house, where the victim, who was visibly drunk, remained outside when the others entered the house. She vomited repeatedly on the front porch. Jackie and other adults directed the victim's friends to move her from the front porch so "the cops" would not notice her. In response, Shantell searched for the victim, finding her in the back yard with the appellant. Shantell attempted to help the appellant with the victim, but the appellant resisted her efforts and insisted on helping the victim by himself. The appellant then carried the victim down into the basement and into a back bedroom, closing the door behind them.

[¶ 7] Shantell, Enrique, Justin, and T.C. were sitting in the living room just outside the bedroom. Their estimates of the length of time the appellant was in the bedroom with the victim varied, with the longest estimation being 10 to 20 minutes. The victim testified that she recognized the person in the room with her as being the appellant. She identified him by his voice, his shaven head, his headband, and the white sweatshirt he was wearing. She testified that the ap-

---

1. Historically, this Court has paid lip service to the concept of giving only the plain error rule's limited review to sufficiency of the evidence issues, but in practice we have performed our usual sufficiency of the evidence analysis whether or not a motion for judgment of acquittal was made in the trial court. In truth, the plain error standard does not lend itself to application where the issue is sufficiency of the evidence. One, there is no "incident" that is alleged to be error, and no objection can be made to the failure to have presented evidence on one or more of the elements of the crime. Two, the "clear and unequivocal rule of law" element of plain error analysis does not "fit" a sufficiency of the evidence analysis. Third, the proposition that a defendant's guilt must be proved with competent evidence bearing upon each of the crime's elements always involves a fundamental right. Finally, a defendant is always prejudiced if he is found guilty and the evidence is not sufficient to establish his guilt. For these reasons, we hereby abandon any adherence to the plain error rule where sufficiency of the evidence is the issue.

pellant laid her down on a mattress, laid down beside her, rubbed her arm, and told her he was going to "try something new." He then "pull[ed] and tugg[ed]" her pants off, positioned himself between her legs, and "lick[ed her] private [parts]." The victim testified that she was going in and out of consciousness—passing out—and the next thing she remembered was being on top of the appellant, "going side to side" and falling over, while the appellant struggled to keep her upright so he could "have sex with" her. She testified that she felt his penis "inside" and she felt it "hit my leg."

[¶ 8] When the appellant left the bedroom, he closed the door behind him, and as Shantell got up to go check on the victim, the appellant said, "[N]o, she's fine." He also said that the victim had vomited on her pants. The appellant left the basement a few minutes later, at which time Shantell, Enrique, T.C., and Justin went into the bedroom. They found the victim lying on the mattress. Her pants were on the floor. Shantell noted that there was no vomit on the victim's pants. After a period of indecision as to what they should do, T.C. covered the victim with a blanket and the group went back out into the living room. T.J. and Jamie then came downstairs. Upon being told the situation, they went into the bedroom and put the victim's pants back on her. In doing so, they noticed that the top button of the pants was missing. The button was found in a "dust ruffle" next to the mattress. Shantell then told Mark about the victim's condition, and Mark carried her to his car and took her and Shantell home.

## DISCUSSION

[¶ 9] Eventually, the victim's parents learned about the incident and, after an investigation, the appellant was charged with third-degree sexual assault, in violation of Wyo. Stat. Ann. § 6–2–304(a)(i) (LexisNexis 2005), which reads as follows:

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree;

(i) The actor is at least four (4) years older than the victim and inflicts sexual

intrusion on a victim under the age of sixteen (16) years[.]

((i) and (ii) Repealed by Laws 2007, ch. 159 § 3.) The elements of that crime, as the jury was instructed in this case, are as follows:

1. On or about the 12th or 13th day of August, 2005.

2. In Washakie County, Wyoming.

3. The Defendant, Raul Garay.

4. Inflicted sexual intrusion upon [the victim].

5. The Defendant was at least four years older than [the victim]; and

6. [The victim] was under the age of sixteen years.

[¶ 10] After a jury trial, the appellant was convicted of third-degree sexual assault and was sentenced to incarceration for a term of 13 to 15 years. The only element of the crime contested in this appeal is whether the appellant inflicted sexual intrusion upon the victim. The appellant does not challenge the fact that any incident, if such occurred, occurred in Washakie County, Wyoming, on or about August 12–13, 2005, and that, at the time, he was 29 years of age and the victim was 14 years of age.

[¶ 11] We will affirm the appellant's conviction because (1) the appellant's arguments are based almost exclusively upon inferences he wishes the jury would have drawn from the evidence, rather than the inferences the jury apparently did draw; (2) the focus of the appellant's brief and oral argument was upon the supposed lack of qualifications of one of the State's expert witnesses, despite the fact that he did not object below to the witness's qualifications and, in fact, waived the necessity of a *Daubert* hearing; and (3) the trial record contains not just sufficient evidence, but abundant evidence, of the appellant's guilt, with or without the drawing of any inferences and with or without the expert's testimony.

[¶ 12] Several witnesses saw the 29–year-old appellant take a drunken 14–year–old girl into a bedroom and shut the door. When they went in, she had her pants on. When he left, her pants were off. She testified that he forcefully removed her pants, then licked

her private parts and put his penis in her vagina. Her pants were found on the floor, with the top button missing. He lied about the reason her pants were off by claiming that she had vomited on them. A reasonable trier of fact could determine, from those facts alone, that third-degree sexual assault had occurred as charged. The appellant did not testify, leaving the question of what happened in the bedroom solely a question of the victim's credibility. The jury was aware that the victim did not immediately report the incident, that there was no biological evidence to corroborate her story, and that, while the victim exhibited signs typical of a child who had been sexually abused, not all children who show those signs have been sexually abused. Nevertheless, the jury believed her, and it is not for us to second-guess that conclusion.

## CONCLUSION

[¶ 13] There was sufficient evidence for the jury to determine beyond a reasonable doubt that the appellant was guilty of third-degree sexual assault. Affirmed.